IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


DAVID A. COWLES                                                    PLAINTIFF

                v.                       Civil No. 13-3053

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                     DEFENDANT

MEMORANDUM OPINION

Plaintiff, David A. Cowles, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his/her claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.        Procedural Background**

Plaintiff applied for DIB and SSI on April 19, 2010. (Tr. 22.) Plaintiff alleged an onset date of February 9, 2009 due to nervousness, weakness, alcoholism, and fear of heights. (Tr. 215.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on September 15, 2011. (Tr. 40.)  Plaintiff was present to testify and was represented by counsel.  The ALJ also heard testimony from Plaintiff's girlfriend, Deborah Cooper, and from Vocational Expert ("VE") Dale Thomas. (Tr. 40.)

At the time of the administrative hearing, Plaintiff was 52 years old, and possessed a high school education. (Tr. 216.) The Plaintiff had past relevant work experience ("PRW") of  construction worker. (Tr. 204.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On October 17, 2011, the ALJ concluded that Plaintiff suffered from the following severe impairments: alcoholism, degenerative joint disease, and loss of hearing. (Tr. 25.) The ALJ found that Plaintiff maintained the residual functional capacity to perform light work except he "cannot do any work requiring excellent hearing. He can frequently finger, handle and do rapid and repetitive flexion and extension with his wrists. He must avoid hazards including moving machinery and unprotected heights., The claimant cannot appropriately respond to the usual work situations and routine work changes." (Tr. 26.)

The ALJ found that the Plaintiff's substance abuse was a contributing factor material to the determination of disability. (Tr. 34.)  With the assistance of the VE, the ALJ determined that if the Plaintiff stopped his substance abuse, Plaintiff could perform such representative occupations as production work bench assembler, and maid/housecleaner/laundry worker. (Tr. 34.)

Plaintiff requested a review by the Appeals Council on December 16, 2011. (Tr. 9.) The Appeals Council declined review on February 27, 2011. (Tr. 1.)

## II.     Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent

2

positions from the evidence, and one of those positions represents the Secretary's findings, the court must

affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of

proving his disability by establishing a physical or mental disability that has lasted at least one year and

that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211,

1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental

impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§ § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted

for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to

each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since

filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination

of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether

the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is

able to perform other work in the national economy given his age, education, and experience. *See* 20

C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the

plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See*

*McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion

Plaintiff made a Motion to Supplement the Record With Missing Evidence pursuant to sentence

six on September 18, 2013. (ECF 10.) He also raised three issues on appeal pursuant to sentence four: 1)

the ALJ erred by failing to incorporate or discuss evidence from Plaintiff's October 5, 2011 MRI report

from Boston Mountain Rural Health Center, which was acknowledged as upcoming evidence by the ALJ

at the hearing; 2)  the ALJ erred in relying upon improper conjecture and speculation from psychological CE Dr. Bunting as to the source of his tremors and the reason he was discharged from his job; and 3) the ALJ had no medical basis to support his finding that Plaintiff could "frequently finger, handle and do rapid and repetitive flexion and extension with his wrists." (ECF 12.)

This Court finds that the letters referenced in the motion to supplement are new and material. Further, because this Court finds that the ALJ failed to discuss the MRI and carpal tunnel medical evidence in the record, and that the ALJ failed to fully develop the record regarding Plaintiff's tremors,  the other issues will not be addressed.

### A.        Motion to Supplement the Record

Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g);  *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993); *Chandler v. Secretary of Health and Human Servs.,* 722 F.2d 369, 371 (8th Cir. 1983).  "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination."  *Woolf,* 3 F.3d at 1215.

In this case, Plaintiff seeks to add the December 6, 2010  examination findings from neurologist Dr. Bruce Robbins, and a letter from Plaintiff's former employer, Joseph Martin. (Pl.'s Mot. Ex. A, F.)

As pointed out in Defendant's brief, Dr. Robbins letter is referenced in Dr. Jenning's progress report on March 3, 2011. (Def.'s Br. 7, Tr. 418.) However, this two sentence reference only notes that he "referred Dr. Robbin Note from recent consult. He has not stopped drinking and neuro problems felt related." (Tr. 418) It does not discuss or indicate Dr. Robbin's full findings on the tremors, and does not address his findings on the carpal tunnel. As Dr. Robbins is a specialist and discusses Plaintiff's tremors and carpal tunnel, the letter is quite relevant to an Overall RFC in which the ALJ assigned considerable

fingering and repetitive wrist manipulation ability. The letter also elaborates on several symptoms of Plaintiff's essential tremor, and prescribes Atenolol as a treatment for the tremor, which could affect the ALJ's finding of alcoholism as a material contributing factor. It is prior to both the ALJ hearing and the AC review of the case, therefore it is probative of the claimant's condition for the relevant time period.

Likewise, Mr. Martin's letter is also material to the case in that it directly rebuts Dr. Bunting's statement in her psychological examination notes that "[i]t seems very possible that this patient's work of 15 years was aware of his drinking, and it and the associated tremor had begun to interfere with his working." (Tr. 360.) According to the letter, Mr. Martin is the president and owner of Martin Construction, where Plaintiff worked from 1995 until his resignation in 2008 due to tremor and loss of balance. (Pl.'s Motion  Ex. F.) The ALJ gave Dr. Bunting's opinion "great weight." (Tr. 29.) The letter is probative of the appropriate time period as it addresses the Plaintiff's most recent work experience just prior to his alleged disability.

Thus, the only real question concerning Dr. Robbin's and Mr. Martin's  letters is the reason why they were not included in the official transcript.  Plaintiff argues that Dr. Robbin's letter was included in the medical records sent to ODAR, and can be found in the attorney's copies of that information. (Pl.'s Br. 2.) Plaintiff notes that documents within the record make note of the existence of Dr. Robbin's letter in several places. (Pl.'s Mot.  2-4.) He also argues that Mr. Martin's letter was submitted into evidence prior to the hearing. (Pl.'s  Mot. 10.) Neither Plaintiff nor Defendant can explain why these letters were not included in the official transcript.

Given that neither party can provide an explanation, and given the relevance of both pieces of evidence, this Court finds that good cause exists supporting Plaintiff's failure to present it earlier.  Thus a remand is necessary to permit the ALJ to evaluate this evidence.

   **B.**      **Failure to Consider MRI Evidence of Back Issues and Medical Evidence of Carpal Tunnel Syndrome**

An ALJ has no duty " to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.' " *Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir.2003) (quoting *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir.1996)).However, once a claim has been presented, the ALJ must consider the whole record. He is "not free to ignore medical evidence." *Reeder v. Apfel,* 214 F.3d 984, 988 (8th Cir. 2000) (ALJ's opinion did not discuss or discredit all diagnoses or limitations listed in medical records.)

In this case, lower back issues and carpal tunnel syndrome were not alleged on the Plaintiff's initial application. He did allege back pain,  along with pain and weakness in the legs, knees, and arms in his Pain Report and his Disability Appeal Report. (Tr. 236, 274-79). Medical records indicating a diagnosis of carpal tunnel were submitted prior to the hearing. (Tr. 416.)  At the beginning of the hearing, Plaintiff's attorney noted that he had just had an x-ray at Boston Mountain and that he was scheduled for an MRI shortly after the hearing. (Tr. 45.) At the end of the hearing, the ALJ noted that Plaintiff's attorney had additional evidence to get to him. (Tr. 111.) During the hearing, Plaintiff testified to a diagnosis of carpal tunnel and  back problems. (Tr. 52, 56-57.) In his Request for Review by the AC, Plaintiff included detailed discussion of the MRI evidence. (Tr. 11-18.)

The medical notes from Boston Mountain on September 14, 2011 indicated that an x-ray showed "multilevel degenerative arthritic changes,"with "wedging of his T12, L1, L2 vertebrae." (Tr. 421.) The MRI on September 20, 2011 showed "disc desiccation and disc protrusion with osteophyte formation from L3-4 to L5-S1. At each of these levels, there is mild bilateral foramen narrowing but little if any canal stenosis. There is no evidence of focal disc herniation. There are discogenic changes in the superior endplate of L4 and there is a small Schmorl's node in the inferior endplate of L2. Degenerative changes in the upper lumbar spine are mild and limited to disc desiccation." (Tr. 423.)

Given the testimony and medical evidence of back issues and carpal tunnel, it is puzzling that the ALJ did not either discuss or discredit either of these issues or the medical records regarding them in his

6

opinion. Without that discussion, this Court cannot discern if this medical evidence was considered in the formation of the opinion. Given that the Physical RFC from July 2010 assessed no postural limitations, and given that the ALJ found that the Plaintiff was capable of considerable fingering and wrist manipulation ability, this Court cannot say that the lack of explicit discussion is a harmless error of opinion-writing technique. Therefore a remand is necessary to ensure that this evidence is explicitly considered in the opinion.

**C.     Failure to Develop the Record Regarding Plaintiff's Tremors**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists  "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). Once the ALJ is made aware of a crucial issue that might change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004.); *see e.g. Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (ALJ's failure to recontact Commissioner's consultative physician to authenticate his report was reversible error when that report supported Plaintiff's claim).

Central to this case are Plaintiff's bilateral hand tremors. They are the stated reason he is unemployed.  Every medical record notes them, but no one has made a definitive diagnosis of  them to date.  Rather, the diagnoses have been varied, and two have literally had a question mark by them.

In terms of diagnosis, Plaintiff's medical records from  Willow Street Health Center are as follows: On April 18, 2008 his record  states "Essential Tremor?" as part of the Impression section. (Tr. 352.) On May 5, 2008, the Impression from the same clinic  is difficult to read, but appears to state "B-9 tremor only." (Tr. 350.) On November 10, 2008, tremor was noted on the record, but no Impression was stated about them. (Tr. 348.) On January 30, 2009 he was admitted to the North Arkansas Regional Medical Center with a BAC of  0  and diagnosed  with acute delirium tremors from alcohol withdrawal. (Tr. 32.)

On March 9, 2009, the Willow Creek Health Center impression was "DT's" or alcoholic recovery delirium tremors.  (Tr. 346.)

The next physical examination in the record is the consultative exam by Dr. Shannon Brownfield on July 19, 2010. (Tr. 380.) Her diagnosis concerning the tremors states "tremors ? type." (Tr. 384.)

On March 3, 2011, Plaintiff was examined at Boston Mountain Rural Health Clinic. The assessment regarding tremor was "Essential and other specified forms of tremor - 333.1 (Primary)." (Tr. 418.) As discussed above, the notes reference a consult with Dr. Robbins, and indicate that he should continue taking the Atenolol. (Tr. 418.) On June 28 and August 30, 2011, the assessment states "Essential and other specified forms of tremor - 333.1 (Primary)" (Tr. 411, 416. ) On September 14, 2011 the exam did not note tremor in the assessment, but did note that he was still taking his Atenolol. (Tr. 420.)

The letter from neurologist Dr. Robbins was not part of the record, but was submitted on the motion to supplement discussed above. Dr. Robbins saw Plaintiff on December 6, 2010. He noted that "plaintiff  has noticed that the tremors are somewhat decreased with alcohol." (Pl.'s Mot. Ex. A1 His impression stated "Tremor. I don't think the patient has Parkinson's disease but probably essential tremor."  He prescribed Atenolol.[2] He instructed Plaintiff to stop drinking and stated that he suspected alcohol associated with tremor. (Pl.'s Mot. Ex. A2.)

Thus, upon close review, the medical record shows repeated uncertainty and inconsistency as to the type and cause of Plaintiff's tremors. While alcohol withdrawal can be a cause of tremor, it can also be an effective, albeit not medically advised, treatment for essential tremor. http://www.merckmanuals.com /professional/neurologic_disorders/movement_and_cerebellar_disorders/tremor.html?qt=essential%20t remor&alt=sh. There are a number of other causes of essential tremor that are not related to either  alcohol

---

[2]Atenolol is a selective beta-blocker indicated for treatment of hypertension and management of cardiovascular patients. http://www.pdr.net/drug-summary/tenormin?druglabelid=1128 (accessed Apr. 15,2014). However, beta blockers are also indicated in treatment of essential tremor. http://www.merckmanuals.com/professional/neurologic_disorders/movement_and_cerebellar_disorder s/tremor.html?qt=essential%20tremor&alt=sh (accessed Apr. 15,2014).

AO72A
(Rev. 8/82)

abuse or withdrawal. *Id.* There is no indication in the medical summaries that any of these other causes of essential tremor have been ruled out.

Given the amount of variation and uncertainty in the diagnoses regarding Plaintiff's tremor, it does not appear that the record has been fully developed as to Plaintiff's tremor. Without this development, it is not clear to this Court that the ALJ has the requisite medical evidence to determine whether the Plaintiff's alcohol use is causing his tremor or is in response to his tremor. Because alcohol's role in the tremor is a crucial issue in this case, a remand is necessary.

On remand, the ALJ is directed to arrange a consultative examination with a neurologist in order to definitively determine, with as much certainty as is medically possible, the type and cause of Plaintiff's tremors. All necessary tests to rule out causes other than alcohol should be performed as part of this examination. The neurologist must then complete a Physical RFC evaluation of all Plaintiff's Physical issues, so that a current and comprehensive Physical RFC is available to the ALJ in making his Overall RFC Assessment. Once this Overall RFC Assessment is determined, that information should be presented to the VE, either directly or in interrogatory form.

**V.      Conclusion**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant tosentence four of 42 U.S.C. § 405(g).

DATED this 16th day of April 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

9